UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BRIDGET A. IMSE,  )  <br>    Plaintiff,  ) <br> ) <br> v.  ) <br> ) <br> KILOLO KIJAKAZI,  ) <br> Acting Commissioner of the  ) <br> Social Security Administration,  ) <br>     Defendant.  ) | CAUSE NO.: 1:20-CV-363-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Bridget Imse on October 16, 2020, and Plaintiff's Opening Brief [DE 25], filed August 16, 2021. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On September 24, 2021, the Commissioner filed a response. Plaintiff did not file a reply.

**I.    Background**

On September 12, 2017, Plaintiff filed an application for benefits alleging that she became disabled on March 23, 2017. Plaintiff's application was denied initially and upon consideration. On July 19, 2019, Administrative Law Judge ("ALJ") Kathleen Winters held a hearing at which Plaintiff, along with an attorney and a vocational expert ("VE"), testified. On January 9, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant engaged in substantial gainful activity after the alleged onset date.

1

2. There is also a continuous 12-month period during which the claimant did not engage in substantial gainful activity.

3. The claimant has the following severe impairments: status-post SI joint fusion; hip bursitis; obesity; and depression and anxiety.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that she can occasionally climb, balance, stoop, kneel, or crouch, but can never crawl. She must work with no concentrated exposure to fumes, dusts, odors, gases, and poor ventilation, and with a moderate level of noise. She can do work that can be learned in 30 days or less with simple routine tasks, routine workplace changes and with occasional interaction with the general public. She is able to remain on task in two-hour increments

6. The claimant is unable to perform any past relevant work.

7. The claimant was a younger individual age 45-49 on the date the application was filed.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, since September 12, 2017, the date the application was filed.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate

Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 16]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the

3

factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the ALJ's Step 5 finding is not supported by substantial evidence because the VE expert testimony as to methodology was insufficient and erred in not determining that Plaintiff had a closed period of disability. The Commissioner argues that the ALJ's opinion was supported by substantial evidence.

#### A. VE Testimony

Plaintiff argues that the VE testimony was insufficient to satisfy the evidentiary standing and the ALJ's finding at Step Five must be remanded. Based on the VE's testimony, the ALJ found that Plaintiff was able to perform the requirements of sedentary jobs such as addressing clerk, table worker, and cuff folder, for a total of approximately 45,000 jobs in the national economy. As the

Commissioner argues, 45,000 is a significant number of jobs. *See, e.g., Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. July 22, 2021) (30,000 jobs); *Engel v. Kijakazi*, No. 20-CV-1206-SCD, 2021 WL 4843871, at *10 (E.D. Wis. Oct. 18, 2021) (23,000 jobs is significant; listing cases).

Plaintiff also argues that the VE's testimony about his methodology is insufficient to support the reliability of the numbers of jobs available to someone with Plaintiff's RFC. She argues that the VE did not make a meaningful effort to explain how the numbers associated with the occupations of a different skill level were obtained from the pertinent Standard Occupational Codes. She points out that two of the SOC codes used contained occupations with different exertional levels and argues that there is no way to determine how the VE determined the number of available jobs at a given occupational level.

When asked how he determined the job numbers, the VE explained that he derived the numbers from the Bureau of Labor Statistics, the Census Bureau current population surveys and labor market surveys. AR 72. He explained that the SOC codes and the North American Industry Classification System groups jobs into industries and the "two of those put together and doing due diligence on each of these jobs, depending on the numbers in which all these jobs derive from, that's how [he] would come up with [his] particular numbers." AR 73. When counsel for Plaintiff questioned how the VE obtained the appropriate number of jobs at a given skill and exertional level, the VE explained that he uses "labor market surveys" and "the Bureau of Labor Statistics and look at each SOC code number, and then I [] do my own due diligence with employability analysis and labor market surveys." AR 74. He explained that there is not a particular formula that he uses to allocate the particular jobs within the SOC codes, and that he uses specific labor market surveys to come up with the job numbers he uses. AR 74-75. He did not provide the source

5

material, explaining that it is his work product.

Although she does not dispute his qualifications as an expert, Plaintiff argues that the VE's refusal to produce the surveys and sources of the numbers on which he based his testimony means that the testimony does not rise to the level of substantial evidence. The Commissioner argues that the VE adequately described the information on which he relied. The Court agrees. Although "[s]ometimes an expert's withholding of such data, when combined with other aspects of the record, will prevent her testimony from qualifying as substantial evidence [,] . . . sometimes the reservation of data will have no such effect." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019). In this case, "tak[ing] into account all features of the vocational expert's testimony, as well as the rest of the administrative record," and "defer[ring] to the presiding ALJ, who has seen the hearing up close," the Court concludes that the expert's testimony clears "the more-than-a-mere-scintilla threshold." *Id.*; *see also Bruno v. Saul*, 817 F. App'x 238, 243 (7th Cir. 2020) ("Though the VE's description did not reveal the precise mechanics and statistical model involved, it nevertheless constitutes a 'reasoned and principled explanation,' at least by the low substantial evidence standard.").

B. Closed Period

Plaintiff argues that the ALJ erred in not finding that she had a closed period of disability from September 26, 2017, to November 1, 2018. "A claimant may receive an award of temporary benefits if she is disabled for 12 months or longer, even if she later recovers sufficient health to return to work." *Summers v. Berryhill*, 864 F.3d 523, 528 n.3 (7th Cir. 2017) (citing 20 C.F.R. § 404.1594); *see also Jackson v. Astrue*, No. 09 C 50028, 2010 WL 4793309, at *13 (N.D. Ill. Nov. 18, 2010) ("Claimant need not have a current disability in order to qualify for DIB benefits under Title II, and the ALJ should have considered the possibility that Claimant was disabled during a

closed period lasting at least twelve months.") (citing 20 C.F.R. § 404.320(b)(3); *Brown v. Massanari*, 167 F.Supp.2d 1015, 1017 (N.D. Ill. 2001)). The ALJ did not specifically address whether Plaintiff was disabled during a closed period. Accordingly, "the court must consider whether substantial evidence supported the ALJ's finding that Claimant had not been under a disability for any period of at least twelve months." *Jackson v. Astrue*, No. 09 C 50028, 2010 WL 4793309, at *13 (N.D. Ill. Nov. 18, 2010).

Plaintiff argues that the ALJ based the RFC for the entire period at issue on her abilities at the end of the period at issue when she had reached maximum improvement. The Commissioner argues that the ALJ specifically evaluated the evidence for the period from September 2017 through November 2018 and explained how it supported the RFC assessment. In this case, the ALJ described Plaintiff's treatment, including back surgery in early 2018 and joint fusion in August 2018, physical therapy, and significant pain treatment including SI injections, steroid injections, and bursa injections in 2017 through 2018. The ALJ noted that in a November 2018 visit to follow up on her joint fusion surgery, Plaintiff was doing well with improved strength and pain. She concluded that "records fail to reflect [significant] pain or any significant musculoskeletal complaints since late 2018." AR 20. The ALJ found the opinions of the state agency reviewing physicians from December 2017, AR 119, and April 2018, AR 147, to be persuasive, and adopted most of the described RFC with additional limitations to account for noise and pulmonary sensitivity. The ALJ adequately explained that Plaintiff was not disabled for the closed period described by Plaintiff, and the Court finds that substantial evidence supports the conclusion that Plaintiff was able to work during that period.

IV. **Conclusion**

For the foregoing reasons, the Court hereby **DENIES** the relief requested in Plaintiff's

Opening Brief [DE 25] and **AFFIRMS** the Commissioner of Social Security's final decision**.**

SO ORDERED this 16th day of March, 2022.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record